IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DOUGLAS W. BARTON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 3:11-cv-01239 ) JUDGE NIXON/BRYANT |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY | ) ) ) ) |
| Defendant | |

**To: The Honorable John T. Nixon, Senior United States District Judge**

## Report and Recommendation

This action was brought under 42 U.S.C. §§ 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") upon an unfavorable decision by the SSA Commissioner ("the Commissioner") regarding plaintiff's application for Disability Insurance DIB ("DIB") under Title II of the Social Security Act (the "Act"). 42 U.S.C. §§ 416(i), 423(d). For the reasons explained below, the undersigned **RECOMMENDS** that the plaintiff's motion for judgment on the administrative record be **DENIED** and the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Douglas W. Barton ("Plaintiff") filed for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 416, on April 16, 2009. (Administrative Record ("AR") p. 102) Plaintiff's claims were founded upon diagnosis of chronic pancreatitis. (AR p. 130) Noting evidence of depression in the record, the ALJ also considered Plaintiff's mental limitations. (AR p. 14-15) Plaintiff's initial request was denied on August 24, 2009 and his request for reconsideration was denied on February 1, 2010. (AR pp. 53-5, 61-2)

Subsequent to Plaintiff's request, a hearing was conducted before an Administrative Law Judge ("ALJ"), David A. Ettinger, on June 10, 2011 at which time Plaintiff amended the disability onset date to March 31, 2009. (AR pp. 27-46, 220) Present for the hearing were Plaintiff, his attorney Robert Parker, and vocational expert Gordon H. Doss ("VE"). (AR p. 12)

The ALJ denied Plaintiff's application for DIB on June 10, 2011 and Plaintiff requested review of the ALJ's determination on August 3, 2011. (AR pp. 7, 9-23) The SSI Appeals Council denied Plaintiff's request for review of the ALJ determination on November 4, 2011. (AR pp. 1-3) Thus, the ALJ's determination constituted the final determination of the Commissioner at that time.

The plaintiff brought this action in district court on December 29, 2011 seeking judicial review of the Commissioner's decision. (Docket Entry ("DE") 1) The defendant filed an answer and a copy of the administrative record on March 19, 2012. (DE 7, 8) Thereafter, the plaintiff moved for judgment on the administrative record on April 17, 2012 (DE 12), to which the defendant filed a response on June 14, 2012 also moving for judgment on the administrative record. (DE 16)

This matter is properly before the court.

## II. THE RECORD BELOW

**A. Medical Evidence**

**1. Plaintiff's medical treatment notes**

In August 2008, approximately seven months prior to plaintiff's alleged onset of disability, plaintiff received treatment at Stone Crest Medical Center ("Stone Crest") for epigastric abdominal pain. (AR pp. 194-217) Plaintiff admitted to drinking heavily the preceding Friday and an examination of plaintiff's abdomen showed "tenderness in the epigastric

area with minimal guarding," no rebound, no organomegaly, and audible bowel sounds in all quadrants. (AR pp. 197-98) A CT scan of the abdomen and pelvis was unremarkable as was an ultrasound of Plaintiff's gallbladder. (AR p. 198) Plaintiff was diagnosed with acute pancreatitis and gastroesophageal reflux disease (AR p. 194).

In September 2008, plaintiff received treatment for pancreatitis from Stone Crest Medical Center and Mid-State Gastroenterology ("Mid-State"). (AR p. 226-32, 238-39) Plaintiff reported to Mid-State that he was "currently asymptomatic" in October of 2008. (AR p. 218) A "HIDA scan showed a 4% ejection fraction with duplication of his symptoms," and plaintiff's abdomen was "soft without hernias or masses." (AR p. 218) Plaintiff's treating physician opined that he "probably has biliary dyskinesia and possibly could have small sludge that is not apparent on ultrasound." (AR p. 218) A laparoscopic cholecystectomy was recommended. (AR p. 218)

In November 2008, Plaintiff reported that he felt bloated despite having lost twenty-two pounds. (AR p. 234) Plaintiff also reported that he had stopped drinking and had changed his diet, but still complained of constant epigastric pain at a level of "2 on a 1 to 10 pain scale." (AR p. 234) His abdomen was mildly diffusely tender, but his bowel sounds were present throughout. (AR p. 234) In November of 2008, Plaintiff underwent a laparoscopic cholecystectomy that revealed biliary dyskinesia and signs of pancreatitis. (AR p. 218-22) Plaintiff's gallbladder was removed during the procedure. (AR pp. 222) Following surgery, Plaintiff reported that his symptoms were improving in January of 2009. (AR p. 267)

In March, although depressed over losing his job, Plaintiff "ha[d] learned to manage" the pain from his pancreatitis. (AR p. 267) Blood work performed at Stone Crest in May of 2009 showed that Plaintiff's pancreatic enzymes were elevated, but a CT scan was unremarkable. (AR

3

p. 350) According to Plaintiff's gastrointestinal specialist, there was ""[n]o evidence of acute pancreatitis. The pancreas appears normal . . . [t]he common bile duct is of normal caliber. No stones are identified. The liver, spleen and kidneys appear normal. No free fluid or inflammation." (AR p. 276) Plaintiff's physician ordered a colonoscopy, but Plaintiff did not attend. (AR p. 350)

In July of 2009, Plaintiff began treatment at the VA Medical Center. (AR p. 340) Plaintiff complained of pain in his abdomen, hips, and back at a 4 on a scale of 1 to 10. (AR p. 346) Plaintiff was prescribed hydrocodone for the pain and signed a narcotics contract requiring him to discontinue any illicit substance abuse. (AR p. 492) An upper GI study performed in November of 2009 was negative. (AR p. 500) Plaintiff's abdomen was reported as soft and non-tender in January, and bowel sounds were present throughout. (AR p. 498) In February, Plaintiff tested positive for marijuana in violation of his narcotic contract. (AR p. 492) Despite continued warnings, Plaintiff continued to use marijuana from February until December. (AR pp. 221, 299, 315, 338, 350, 352, 395, 402, 446, 448, 458, 482, 490, 501, 508)

2. **Assessment of the Agency's consulting experts**

On August 21, 2009, Jose Rabelo M.D., an SSA consulting physician, concluded that Plaintiff's medical record demonstrated no severe impairments. (AR pp. 287-95) According to Dr. Rabelo's evaluation, Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and could sit or stand for 6 hours in an 8 hour work day. (AR p. 288) Further, Plaintiff had no limitations in his ability to push/pull, and experienced no postural, manipulative, visual, or environmental limitations. (AR pp. 288-90)

3. **Testimonial Evidence**

   a. *Plaintiff's Testimony*

Prior to the onset of Plaintiff's disorder, he worked for 14 years as a warehouse manager for Logistic Management Services in three different facilities. (AR pp. 40-42) After the onset of is disorder, Plaintiff was placed on a flexible work schedule that allowed him to come and go as needed. (AR pp. 29-30) Plaintiff testified that he left work early or did not work at all approximately three days per week after being placed on light duty. (AR p. 30) Plaintiff performed time analysis studies through December of 2008 and answered telephones or performed computer logistic functions until his termination date on March 31, 2009. (AR pp. 29-30, 40-42) Plaintiff stopped working in March of 2009, but not due to the symptoms from pancreatitis. (AR p. 29) Plaintiff's employer, Logistic Management Services, had experienced a downturn in volume and decided to lay Plaintiff off as a result. (AR p. 29)

Plaintiff testified that he had not looked for work since being laid off in March of 2009. (AR p. 36) However, when pressed on the issue by the ALJ, Plaintiff testified that he had performed two job searches per week and submitted two job applications per week while drawing unemployment benefits. (AR p. 37) Plaintiff testified that he had drawn unemployment benefits for more than a year after his layoff. (AR p. 36-37) When asked to reconcile telling "the unemployment agency that [he was] available to work and able to work with [his] claim that [he was] not able to work," Plaintiff responded that "[he] had to try" due to the "big financial burden" of not working. (AR p. 38)

When asked about illicit drug use, Plaintiff admitted smoking marijuana as late as December of 2009. (AR p. 30) Plaintiff also testified that the last time he drank alcohol was "July of 2008 . . . the last time [he] drank a beer with [his] son." (AR p. 30) Plaintiff also denied any alcohol abuse. (AR p. 30) He further testified that he "was a social drinker," having only "drank a little bit" when he was in his 20s and in the Army. (AR p. 30)

Plaintiff testified that the pain from pancreatitis was persistent from the time he woke in the morning until he relieved himself, ate something, or took pain medications. (AR p. 31) The pain was not localized to his abdomen but radiated into both hips, and ranged in severity from 3 to 6 on a scale of 1 to 10. (AR p. 31-32) Plaintiff also reported limitations on his activities. He experienced a great deal of swelling (AR p. 32), was unable to "bend over, pick up anything, [or] lift" anything without intense pain (AR p. 33), and experienced postural limitations. Plaintiff testified that he could sit leaning forward without pain for only 45 minutes at a time (AR p. 33), stand for a maximum of an hour, and could only walk for short periods of time. (AR p. 35)

    b. *VE Testimony*

The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, who had achieved a graduate equivalency diploma, and had the same work experience as Plaintiff. (AR p. 44) Further, the ALJ asked the VE to consider that individual under both a light duty and sedentary classifications with the ability "to alternate sitting and standing every two hours." (AR p. 44) The VE testified that an individual with those limitations, including the sit/stand option, would be able to find sustained work within both the State and national economies.

If the hypothetical individual were able to perform light duties, the VE testified that both of Plaintiff's prior job descriptions—warehouse manager and time analysis clerk—would be available with a sit/stand option every two hours. (AR p. 44) Under a sedentary classification, the VE testified that the time analysis clerk's position would be the only type of Plaintiff's past work available to him. (AR p. 45) However, the VE also identified two other vocations that would accommodate a 2 hour sit/stand option under a sedentary classification. (AR p. 45-46) According to the VE, work in telephone quotations or surveillance systems monitoring would allow a "person [to] get up and move around as needed." (AR p. 45) The VE identified 1730

6

telephone quotation worker's positions available in Tennessee and 65,000 nationally, and 625 surveillance monitoring systems positions in Tennessee and 33,500 nationally. (AR p. 45-46)

## III. ANALYSIS

### A. Standard of Review

The District Court's review of the Commissioner's final decision regarding a denial of DIB is limited to a determination of whether substantial evidence in the record supports that finding and whether correct legal standards were applied. 42 U.S.C. § 405(g); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). A finding of substantial evidence does not require all of the evidence in the record to preponderate in favor of the ALJ's determination, but does require more than a mere scintilla of evidence underpinning a denial of DIB. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

The ALJ's determination is entitled to deference where "a reasonable mind might accept [the evidence in the record] as adequate to support" the ALJ's determination even though it could also support a different conclusion. *Rogers*, 486 F.3d at 241; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, "failure to follow the rules" that the Agency promulgates to control the process of benefit determination "denotes a lack of substantial evidence, even where the ALJ's" determination is otherwise supportable. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (*quoting Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009))

### A. Determination of a "disability" under the SSA

To substantiate an entitlement to DIB under the Act, a claimant must demonstrate "a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. §§ 423(a)(1)(E), (d)(1)(A). Determination of a "disability" under the SSA's procedures requires a five-step sequential assessment of whether: 1) a claimant has engaged in substantial gainful activity during the period under consideration; 2) the claimant has a severe medically determinable physical or mental impairment that significantly limits his ability to do basic work activities; 3) the claimant has a severe impairment that meets or equals one of the listings in Appendix I, Subpart P, of the regulations and meets the durational requirements; 4) the claimant's impairment prevents him from doing his past relevant work; and, if so, 5) whether it is impossible for the claimant to transition to other work. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), (b)-(g). Only steps two and three of this analysis are pertinent to Plaintiff's claims here.

Where the ALJ encounters claims of disability predicated in part on a medical condition and in part on severe symptomology associated with a medical condition, the ALJ must engage in a two-part analysis to gauge the impact of the deleterious symptoms on the claimant's ability to function. 20 C.F.R. § 416.929. First, the ALJ must determine whether the underlying medical condition "could reasonably be expected to produce the claimant's symptoms." *Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(a)). Where the ALJ answers the first question in the affirmative, he must then endeavor to determine whether "the intensity, persistence, and limiting effects of the symptoms [impair] the individual's ability to do basic work activities." *Id*.

As part of the second step, the ALJ must consider:

> [t]he claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id.*

**B. Ruling of the ALJ**

In an unfavorable ruling issued June 10, 2011, the ALJ found that Plaintiff was not "disabled" within the parameters of the Act. (AR pp. 9-24) In step three of the process, the ALJ found that the functional impact of Plaintiff's medical conditions—depressive syndrome and chronic pancreatitis—were "severe impairments, but not severe enough, either singly or in combination, to meet or medically exceed the requirements set forth in the Listing of Impairments. Appendix I to Subpart P, Regulation No. 4." (AR p. 14)

With regard to Plaintiff's depressive syndrome, the ALJ found:

> While he was initially rated at 55 to 60 on the Global Assessment of Functioning (GAF) Scale, all subsequent ratings were 60. The DSM-IV-TR (p. 34) explains that GAF ratings in the range of 51-60 indicate moderate symptoms of mental impairment. The DSM-IV-TR also states that GAF ratings are not an assessment of the claimant's mental status and/or limitations on his mental status; they are used to track the clinical progress of an individual in global terms. Therefore, the evidence fails to establish that the claimant's depressive disorder resulted in significant work-related limitations for a period of at least 12 months. Additionally, the claimant admitted in the function report at exhibit 7E that he needed no reminders to care for his personal needs, to take medication or to go places, needed no one to accompany him when he went out, drove, grocery shopped once a week, was able to manage finances; read and watched television daily; followed oral/written instructions and changes well; and also got along well with authority figures.
>
> Therefore, the claimant has no more than mild limitations in any functional realm; specifically, in activities of daily living; social functioning; concentration, persistence and pace; and no episodes of decompensation.

(AR p. 14-5)

Turning to Plaintiff's treatment for pancreatitis, the ALJ completed a detailed analysis of Plaintiff's medical records to find that Plaintiff's pancreatitis was a "non-severe" impairment. (AR pp. 15-18) According to the ALJ's finding, Plaintiff's residual functional capacity allowed him to "lift and carry 20 pounds occasionally and 10 pounds frequently; to stand, walk, or sit for

9

at least six hours during a workday; but must be able to alternate between sitting and standing every two hours at will." (AR p. 15)

In regard to Plaintiff's credibility, the ALJ afforded only "some weight" to Plaintiff's account of the severity, persistence, and limiting aspects of the symptoms induced by pancreatitis. (AR p. 15) In support, the ALJ noted that Plaintiff had applied for and received unemployment benefits contemporaneously with his application for disability benefits, Plaintiff had "contradicted himself on several occasions" (AR p. 15), Plaintiff's testimony regarding the severity of his symptoms was contradicted by objective medical evidence and the record revealed that Plaintiff had "used marijuana, regularly, at least throughout 2010 as a pain reliever." (AR p. 18)

## IV. CLAIMS OF ERROR

### A. The ALJ erred by decreasing Plaintiff's credibility due to a contemporaneous application for unemployment benefits.

As noted *supra* at p.5, Plaintiff initially testified that he had been unable to work since March of 2009, but "then acknowledged he received unemployment compensation benefits from March 2009 until about two months prior to the hearing, [during which time] he applied for two jobs each week." (AR pp. 16, 36-8) The ALJ noted that Plaintiff "had no explanation for the apparent inconsistency between his certification that he was able and available for work for the purposes of unemployment benefits and his claim to disability." (AR p. 16) The ALJ ultimately determined that this fact weighed against Plaintiff's credibility. (AR p. 16)

Plaintiff asserts that this is error. (Plaintiff's Br., DE 12-1, p. 8) Plaintiff argues that the "application for, and receipt of, unemployment insurance benefits . . . should not bar him from receipt of [DIB]." (Plaintiff's Br., DE 12-1, p.8) And, by extension, the mere "application for, and receipt of unemployment benefits" should not weigh against him. (Plaintiff's Br., DE 12-1,

p.8) Plaintiff contends that his financial need during the DIB determination process is sufficient to reconcile any inherent inconsistency in applying for both DIB and unemployment insurance benefits. (Plaintiff's Br., DE 12-1, p. 8-9)

The Commissioner responds that Plaintiff's acceptance of unemployment benefits—intended for those who could work but lack available employment—and his testimony that he applied for two jobs per week are inconsistent with Plaintiff's claim that he is disabled from working. (Defendant's Br., DE 16, pp. 1, 12-14) The Commissioner argues that this is only one issue to be considered by the ALJ in the overall credibility determination, and the aggregate weight of the inconsistencies in the record provide substantial evidence for the ALJ's decision. (Defendant's Br., DE 18, pp. 12-14) The Magistrate Judge finds *Workman v. Comm'r of Soc. Sec.* instructional on the issue, even though it is not binding. 105 Fed. Appx. 794 (6th Cir. 2004).

Like Plaintiff, Mr. Workman also "applied for and received unemployment benefits after he lost his job . . . despite the fact that he was also applying for disability insurance benefits for the same period of time." *Id.* at 801. Despite Workman's claims that "he had to have money coming in to pay [the] bills and buy medicine and stuff like that," the ALJ there drew a negative inference from the inherent inconsistency in applying for both DIB and unemployment benefits and ultimately denied Workman's claims. *Id.* at 802. Like Plaintiff here, Workman faulted the negative inference from his contradictory testimony and receipt of unemployment benefits while also seeking DIB in his appeal of the Commissioner's denial. *Id.*

Relying on *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), the *Workman* court found "[t]here is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits

claiming that he is ready and willing to work." *Workman*, 105 Fed. Appx. at 802. On that basis, the *Workman* court upheld the negative inference drawn by the ALJ as a reasonable response to the inherent inconsistency posed by a claimant's contemporaneous application for unemployment and disability benefits, particularly in light of the wholly pecuniary objective. *Id.*

Likewise, the Magistrate Judge finds the negative inference drawn here to be reasonable.

**B. The ALJ erred when he found that Plaintiff experienced no severe mental impairment.**

As cited *supra* at pp. 9-10, the ALJ determined that Plaintiff's depressive disorder was not severe enough by itself, or in conjunction with any other medical issues, to constitute a severe impairment. (AR p. 14) The ALJ cites GAF scores of 55-60, assessed by the VA, as evidence tending to show that Plaintiff "has no more than mild limitations in any functional realm" attributable to his depressive disorder. (AR p. 15) Plaintiff asserts that the ALJ's determination impermissibly rests on these GAF scores rather than "treatment notes and Plaintiff's subjective complaints regarding her [*sic*] medical condition." (Plaintiff's Br., DE 12-1, p. 9)

The burden of proof "rests with the claimant" under the rules promulgated to guide the DIB determination process. *Landsaw v. Sec. of Health & Human Services*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. § 416.912(a),(c)). Correspondingly, the Commissioner has assumed a responsibility to consider all evidence provided by a claimant that is pertinent to the determination of disability. (20 C.F.R. §§ 416.920, 929); *see also Minor v. Comm'r of Soc. Sec.*, 513 Fed. Appx. 417, 434 (6th Cir. 2013). While objective medical evidence, "medical signs and laboratory findings," weighs heavy in the balance of a DIB determination, the Commissioner also mandates consideration of the opinions of treating and non-treating physicians, as well as a claimant's own testimony regarding the severity of the symptoms he or she experiences. 20 C.F.R. §§ 416.912, 913, 920, 926-929

GAF scores "are not raw medical data and do not necessarily indicate" the nature and extent of a claimant's impairment due to a mental disorder. *Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007). Rather, they are "a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 502 n.7 (6th Cir. 2006). Scores in the range of 40-50 represent serious symptoms resulting in marked difficulty, and scores in the range of 50-60 represent moderate symptoms. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders p. 32 (4th Ed. 1994). However, "the Commissioner 'has declined to endorse [them] for use in the Social Security and SSI disability programs' . . . [because they] have 'no direct correlation to the severity requirements of the mental disorder listings.'" *Kennedy*, 247 Fed. Appx. at 766 (quoting 65 Fed. Reg. 50746, 50764-65) (internal citations omitted)

At the outset, the Magistrate Judge notes that, contrary to Plaintiff's assertion, the ALJ did not rely solely on the GAF scores. The ALJ specifically noted Plaintiff's testimony that he was able to perform activities of daily living without assistance or reminder and exhibited no severe limitations following direction or working under the direction of others. (AR p. 14) Likewise, the ALJ also referenced Plaintiff's medical records from the VA showing that he experienced no severe limitations. (AR p. 14)

While the Commissioner has not elected to include the GAF score as a dispositive tool in the DIB determination process, it is still "valuable additional functional information" reflective of what "medical sources routinely observe and make judgments about an individual's functional abilities." 65 Fed. Reg. 50764. As the ALJ noted, they are useful in "track[ing] the clinical progress of an individual in global terms," and were appropriately used in that context to confirm the ALJ's finding in regard to the treatment notes submitted by Plaintiff. (AR p. 14)

Plaintiff's treatment for depression was sporadic as the ALJ noted. (AR p. 14) Plaintiff was seen by psychiatrists for the VA on six different occasions. (AR pp. 360-538) As the Commissioner notes (Defendant's Br., DE 16, pp. 15-16), Plaintiff was consistently described as well-groomed; alert and oriented to time, place, and person; cooperative; and goal oriented. (AR pp. 406, 413, 441, 451, 472) Although suffering from depression and occasional panic attacks, Plaintiff's affect and speech were normal, his judgment and insight were not impaired, his memory was intact, and his concentration and intelligence were average. (AR pp. 406, 413, 441, 451, 472) Moreover, Plaintiff has provided no support for a determination that is contrary to that made by the ALJ.[1]

Thus, the Magistrate Judge finds substantial evidence to support the ALJ's determination in regard to Plaintiff's mental limitations.

## C. The VE's testimony conflicts with the Dictionary of Occupational Titles.

As noted *supra* at pp. 6-7, the hypothetical RFC proposed by the ALJ to the VE includes a requirement to "alternate sitting and standing every two hours." (AR p. 44) Plaintiff asserts that a "sit/stand" option is not encompassed within the Dictionary of Occupation Titles ("DOT"), and, therefore, the VE must resolve the conflict "between the jobs identified by the VE and the DOT's classification of those jobs." (Plaintiff's Br., DE 12-1, p. 10) (citing *Allshouse v. Commissioner of Soc. Sec.*, 2008 WL 4372646 at *10 (E.D. Mich. 2008)). Plaintiff's claims are without merit.

The DOT broadly describes the physical requirements to perform most jobs within the national economy and "describes the specific vocational preparation needed for [those]

---

[1] The Magistrate Judge notes that both parties were admonished by order dated March 19, 2012 to make proper citation to the record to support their arguments and conclusion. The Court "is not a pig[] hunting for truffles" in Plaintiff's filings to support his claims of disability. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

occupations." *Oriental Rug Importers, Ltd. v. Employment & Training Admin.*, 696 F.2d 47, 48 (6th Cir. 1982). As Plaintiff argues, the DOT does not specify limitations that preclude a claimant's ability to perform any particular vocation such as a sit/stand option. However, contrary to Plaintiff's claims, binding precedent demonstrates that the VE may assess a limitation, such as a sit/stand option, within DOT categories without creating a conflict that needs reconciliation.

As the Commissioner aptly notes (Defendant's Br., DE 16, p. 18), the VE's testimony is an invaluable tool in assessing where a claimant's abilities and limitations place the claimant within the nation's vocational universe. *See Grant v. Schweiker*, 699 F.3d 189, 192 (6th Cir. 1988). An ALJ, who possesses no specialized training, experience, or expertise in vocational fields, may not apply a sit/stand option when relying solely on 20 C.F.R. § 404.1527's grid of vocational categories. *Wages v. Sec. of Health & Human Servs.*, 755 F.2d 495, 496 (6th Cir. 1985).

However, due to considerable training, experience, and expertise within the vocational fields categorized under 20 C.F.R. § 404. 1527, the VE may apply non-standard limitations, such as a sit/stand option, to narrow jobs within vocational categories without creating a conflict necessary of explanation. *Bradley v. Sec. of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) (upholding ALJ's denial of DIB based upon VE's identification of 1350 jobs that would accommodate a sit/stand option out of 540,000 available sedentary jobs).

As such, The Magistrate Judge finds no error in the ALJ's reliance on the VE's testimony regarding a sit/stand option.

**D. The ALJ failed to properly assess Plaintiff's credibility as required by SSA 96-7P.**

In his last claim of error, Plaintiff presses his attack on the ALJ's credibility finding. Plaintiff asserts that, notwithstanding the ALJ's consideration of Plaintiff's application for and

receipt of unemployment benefits addressed *supra* at pp. 10-12, "the ALJ did not adequately evaluate and assess the credibility of [Plaintiff's] statements [about the severity of his symptoms] as required by" Social Security Ruling 96-7P ("SSR 96-7P"). Plaintiff argues that, contrary to the mandate of SSR 96-7P, the ALJ summarily dismissed his testimony. According to Plaintiff, the ALJ was required to "specifically stat[e] the weight he gave to the [Plaintiff's] statements and the reasons for that weight" under SSR 96-7P." (Plaintiff's Br., DE 12-1, p. 12-13)

The regulations governing DIB determination give discretion to the ALJ for the ultimate disability determination. 20 C.F.R. § 404.927(d)(1). That discretion, however, is cabined to ensure a fair outcome. Where, as here, a claimant's medical disorder is not dispositive to the disability determination process, the ALJ is required to evaluate the "intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7P, 1996 LEXIS 4, *1, 2 (July 2, 1996). This evaluation is not performed in a vacuum however.

The ALJ is neither required to accept the claimant's testimony regarding the severity of his or her symptoms on its face, nor is he permitted to dismiss that testimony without good cause. *Id.* Rather, the ALJ is required to assess the claimant's credibility through the lens of the record as a whole, including any objective medical findings and prior statements made by a claimant. *Id.*; *see also Rogers*, 486 F.3d at 247-8. To ensure the ALJ's compliance with this mandate, the regulations require the ALJ to clearly state on the record his findings in regard to the claimant's credibility, the weight afforded to the claimant's testimony, and the basis for his findings. *Id.* Contrary to Plaintiff's claims, that is precisely what the ALJ did in the instant matter.

As noted *supra* at p. 10, the ALJ clearly stated that he did "not fully credit [Plaintiff's] testimony." (AR p. 16) Further, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not credible to the extent they are inconsistent" with the objective evidence provided in the record. (AR p. 18) In addition to the fact that Plaintiff applied for and received unemployment benefits, the ALJ correctly cited contradictions between Plaintiff's claims and the record as a whole as justification for a negative credibility determination. (AR p. 16)

Plaintiff testified to persistent intense pain that ranged daily from 3 to 6 on a scale of 10. (AR 31) Yet, as the ALJ noted, Plaintiff reported to his gastroenterologist in November of 2008 that his pain level was 2 on a scale of 1 to 10. (AR pp. 17, 234) In March and May of 2009, Plaintiff told a different gastroenterologist that his pain "waxes and wanes," comes in attacks lasting only "a day or two," and was manageable. (AR p. 17, 350, 352) In August of 2009, Plaintiff reported to clinicians at the VA that he was pain free. (AR pp. 17, 301) In October of 2010, as the Commissioner notes, a celiac plexus block was cancelled because Plaintiff "was not in a significant amount of pain." (AR p. 415)

Plaintiff's statements, both to the ALJ and to the VA treating staff, indicate that he was not forthcoming in regard to his use of illicit substances. The record reflects that Plaintiff was treated with hydrocodone for pain from July of 2008 through December of 2010 (AR pp. 221, 299, 315, 338, 350, 352, 395, 402, 446, 448, 458, 482, 490, 501, 508), but supplemented that opiate with marijuana in violation of his narcotic medication contract despite repeated warnings by his treating physicians. (AR p. 18, 396, 402-3, 460, 480, 492) Plaintiff also reported to VA personnel in October and November that he had stopped using marijuana, but, as the ALJ notes, tested positive for marijuana use as late as December of 2010. (AR p. 18, 396, 415, 417)

Plaintiff also testified that he was a social drinker and had not used alcohol since July of 2008. (AR p. 30) Yet, Plaintiff reported drinking heavily in August of 2008 and that he had a "history of significant alcohol use in the past." (AR p. 194)

Thus, the Magistrate Judge finds the ALJ's credibility determination supported by substantial evidence.

## V. CONCLUSION

The Magistrate Judge finds that the ALJ's denial of DIB in this matter is supported by substantial evidence. Further, the Magistrate Judge finds that the procedures used by the ALJ were proper.

## VI. RECOMMENDATION

For the reasons stated above, the undersigned recommends that the plaintiff's motion for judgment on the record (DE 12) be **DENIED** and the Commissioner's determination be **AFFIRMED**.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 27th day of November, 2013.

/s/John S. Bryant  
John S. Bryant  
U.S. Magistrate Judge